IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-HC-2105-BO

| ARTHUR DEVON LITTLE, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | O R D E R |
|  | ) |  |
| ROBERT C. LEWIS, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

Arthur Devon Little, a state prisoner, petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed a motion for summary judgment. [D.E. 7] Petitioner received an extension of time in which to respond to the pending motion which was allowed. [D.E. 12] Thereafter, petitioner filed several responses [D.E. 14, 18, 19, and 20] and two motions to appoint counsel [D.E. 5 and 16]. The matter is ripe for determination.

On February 27, 2009, in the Superior Court of Craven County petitioner was convicted after trial by jury of first-degree murder. State v. Little, 203 N.C. App. 684, 685, 692 S.E.2d 451, appeal dismissed, 364 N.C. 329, 701 S.E.2d 246 (2010). Petitioner was sentenced to life imprisonment without parole. Id. At trial Walter H. Paramore, III, represented petitioner. [Pet. Question 16] Petitioner appealed through counsel Richard E. Jester. [Id.} On May 4, 2010, the North Carolina Court of Appeals affirmed petitioner's judgment. Little, 203 N.C. App. 684, 692 S.E.2d 451, appeal dismissed, 364 N.C. 329, 701 S.E.2d 246 (2010) On August 26, 2010, the Supreme Court of North Carolina denied the notice of appeal. Id. Other than his direct appeal, petitioner has made no other post-conviction filings in any state court. [Pet.] Petitioner dated this writ of habeas corpus June 3, 2011, and filed it in this court on June 6, 2011.

## GROUNDS FOR RELIEF

Petitioner contends: (1) his conviction was obtained by the unconstitutional admission of illegally obtained evidence in violation of the Fifth and Fourteenth Amendments; and (2) his conviction was obtained by the denial of counsel in violation of the Sixth and Fourteenth Amendments.

## FACTS

The facts of the case are summarized in the Court of Appeals opinion as follows:

> The evidence tended to show the following. Defendant and the victim, Anthony Terail Jones, had a volatile relationship. In the fall of 2005, defendant planned to sell crack cocaine to Jones, but Jones pulled a gun on defendant and stole the drugs instead. Defendant also believed Jones had broken into his home, and defendant's longtime girlfriend, Anne Marie Santos, testified that Jones was one of two men who had robbed her at gunpoint. On 13 June 2006, defendant took another one of his girlfriends to the U.S. Cellular in New Bern and waited in the car while she went inside. Jones and his girlfriend were at the same store purchasing a phone. When defendant recognized Jones' car in the parking lot, defendant called his brother and a friend to come over and beat up Jones. The two men arrived at the store and waited outside; defendant remained in his car. As Jones and his girlfriend left the store, Jones saw defendant's brother and friend and ran away from them towards defendant's car. Defendant shot Jones several times and then drove away from the scene. Defendant testified that he shot Jones in a panic. Jones died from multiple gunshot wounds.
>
> After driving around and learning from family members that his brother had been arrested, defendant went to the New Bern police department to turn himself in. Defendant was met in the lobby by Deputy Matt Heckman, who knew defendant. Deputy Heckman patted defendant down and placed him in a report writing room with an open door. Deputy Heckman then left the room and asked another officer to "keep an eye on him." Deputy Heckman offered defendant pizza, which defendant accepted. Detective Paul Brown then arrived and asked defendant to step into an interview room upstairs. Detective Brown assured defendant he was not under arrest and then interviewed defendant about the events at the U.S. Cellular store. Another detective observed the interview from an adjoining room and took notes. When the interview touched on Jones' shooting, defendant asked if he needed an attorney. Detective Brown

2

replied "I don't know, I can't answer that for you, are you asking for one?"
Defendant did not reply to this question and continued talking with the
detective. At one point, defendant said he was leaving but did not, and instead,
continued the interview. Defendant eventually admitted shooting Jones and
gave the detective details about the crime. When Detective Brown asked
defendant to write out a statement, defendant asked for an attorney and the
interview ended. Defendant moved to suppress his statement to Detective
Brown, which motion the trial court denied.

Little, 203 N.C. App. at 685-686.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to

the facts of the particular state prisoner's case." Id. at 407; see Hardy v. Cross, ___U.S. ___, 132 S. Ct. 490, 493-94 (2011) (per curiam); Bobby v. Dixon, , ___U.S. ___, 132 S. Ct. 26, 29-31 (2011) (per curiam); Cavazos v. Smith, , ___U.S. ___, 132 S. Ct. 2, 4-8 (2011) (per curiam); Renico v. Lett, , ___U.S. ___, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc); see also, Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 784-85 (2011) (a state court need not cite or even be aware of the Supreme Court precedent, '[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.") Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

B.  Claims

  i. Unconstitutional Admission of Illegally Obtained Evidence

On appeal in a detailed published order the North Carolina Court of Appeals held the following regarding the unconstitutional admission of illegally obtained evidence:

On appeal our

"review of a trial court's denial of a motion to suppress in a criminal proceeding is strictly limited to a determination of whether the court's findings are supported by competent evidence, even if the evidence is conflicting, and in turn, whether those findings support the court's conclusions of law." In re Pittman, 149 N.C. App.

4

756, 762, 561 S.E.2d 560, 565 (citation omitted), disc. review denied, 356 N.C. 163, 568 S.E.2d 608 (2002), cert. denied, 538 U.S. 982 (2003). "[I]f so, the trial court's conclusions of law are binding on appeal." State v. West, 119 N.C.App. 562, 565, 459 S.E.2d 55, 57, disc. review denied, 341 N.C. 656, 462 S.E.2d 524 (1995).

State v. Veazey, N.C. App. , 689 S.E.2d 530, 532 (2009). Where a defendant fails to challenge the findings of fact in an order denying a motion to suppress, this Court's review is "limited to whether the trial court's findings of fact support its conclusions of law." State v. Cheek, 351 N.C. 48, 63, 520 S.E.2d 545, 554 (1999), cert. denied, 530 U.S. 1245 (2000).

Here, the trial court's order denying defendant's motion contains one hundred and seventeen findings of fact and eighteen conclusions of law. In his assignments of error, defendant challenges findings 6–8, 11–15, 19–20, 26–30, 33–35, 37–47, 49, 52–54, 56–117, and all eighteen conclusions. However, in his brief defendant does not challenge any specific findings of fact as unsupported by competent evidence. Thus, all of the trial court's findings of fact are conclusive on appeal. Id. Instead, defendant quotes findings 18, 21–22, 32, 47–53, 55 and 99 in his brief with approval, asserting that "[t]hese findings more clearly support the Conclusion of Law that [defendant] was in custody when he made all of his statements to Detective Brown." Defendant also argues that finding 58 does not support a conclusion that he did not request an attorney. We therefore review the trial court's order to determine whether the findings of fact support conclusions 2–7 which relate to whether defendant (I) was in custody and (II) requested an attorney during the interview.

Defendant argues that the trial court erred in denying his motion to suppress, contending that he was in custody when questioned by police and, thus, was entitled to be advised of his Miranda rights. We disagree.

Statements obtained as a result of custodial interrogation when a defendant has not been advised of his constitutional rights are inadmissible. Miranda v. Arizona, 384 U.S. 436, 444 (1966). The appellate courts of this State have consistently held that the rule of Miranda applies only where a defendant is subjected to custodial interrogation. See, e.g., State v. Phipps, 331 N.C. 427, 442, 418 S.E.2d 178, 185 (1992). . . . Custodial interrogation "'means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Phipps, 331 N.C. at 441, 418 S.E.2d at 185 (quoting Miranda, 384 U.S. 436 at 444) . . . .

The United States Supreme Court has held that in determining whether a suspect was in custody, an appellate court must examine all the circumstances

5

surrounding the interrogation; but the definitive inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. Stansbury v. California, 511 U.S. 318 (1994) ( per curiam ). The United States Supreme Court has recognized that any interview of a suspect by a police officer will have coercive aspects to it. Oregon v. Mathiason, 429 U.S. 492 (1977) (per curiam). However, the United States Supreme Court has also recognized that Miranda warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." Id. at 495.

State v. Gaines, 345 N.C. 647, 661–62, 483 S.E.2d 396, 404–405, cert. denied, 522 U.S. 900 (1997). Defendant cites State v. Hicks for the proposition that the test for determining whether he was in custody for Miranda purposes is "'whether a reasonable person in his position would feel free to leave' or would feel 'compelled to stay.'" 333 N.C. 467, 478, 428 S.E.2d 167, 173 (1993) (quoting State v. Torres, 330 N.C. 517, 525, 412 S.E.2d 20, 24 (1992)). However, our Supreme Court has rejected the "free to leave" test for Miranda purposes and specifically overruled Hicks and Torres to the extent they appear to endorse that test. State v. Buchanan, 353 N.C. 332, 340, 543 S.E.2d 823, 828 (2001). Instead, the ultimate inquiry on appellate review is whether there were indicia of formal arrest. Id.

The uncontested findings show the following. Defendant voluntarily drove to the police station approximately six hours after the shooting. There was no warrant for defendant's arrest nor had the police attempted to contact him or request his presence for an interview. Deputy Heckman, who knew defendant, met him in the public lobby and invited defendant into the secure area of the station. The secure area of the station required a passkey for entry, but anyone could leave the secure area to exit the building without any type of key. Deputy Heckman took defendant into a "report writing room", patted him down for weapons and told him that an investigator wanted to speak with him. Defendant did not object to the frisk, and Deputy Heckman never mentioned the shooting or asked defendant any questions about it. The door to the room remained open while defendant waited. Deputy Heckman never told defendant he was under arrest or could not leave, never handcuffed him, and never spoke to him in an intimidating manner.

Detective Brown met defendant approximately twenty to thirty minutes after defendant's arrival at the station. He introduced himself to defendant and told him he was not under arrest and was free to leave. Detective Brown then suggested to defendant that they speak upstairs where it was quieter. At the station elevator, Detective Brown again told defendant he was not under arrest and was free to leave. Defendant voluntarily accompanied Detective Brown and another officer upstairs. When they entered the upstairs interview room,

6

Detective Brown told defendant once again that he was not under arrest and was free to leave. Unbeknownst to defendant, the other officer entered an adjacent room and took notes on the interview. Detective Brown then began to question defendant about his actions during the day and about the shooting. At one point defendant stood up and said "I'm trying to leave, I didn't do it." Detective Brown did not restrain defendant who then sat back down and continued talking. About sixty to ninety minutes into the interview, defendant made numerous inculpatory statements about the shooting. The interview continued until defendant was asked to write out a statement at which point he refused and requested an attorney. Detective Brown immediately ended the interview.

Defendant contends that "[b]ringing someone inside the secure area of the police station indicates some level of custody" but cites no authority for this proposition. However, "Miranda warnings are not required 'simply because the questioning takes place in the station house[.]' " Gaines, 345 N.C. at 662, 483 S.E.2d at 405 (quoting Mathiason, 429 U.S. at 495).

Defendant next asserts that Deputy Heckman acted as a guard in standing outside the open door of the report writing room while awaiting Detective Brown's arrival and in asking another officer to watch defendant so he would not leave while Deputy Heckman was getting defendant some pizza. Defendant also cites the presence of the note-taking officer in the room adjacent to the interview room as a circumstance indicating the defendant was in custody. The trial court did find that Deputy Heckman stayed in the hallway to keep defendant from leaving but also found that defendant was unaware of the officer's intentions and was unaware that Deputy Heckman had asked another officer to watch him. Likewise, the trial court found that defendant was not aware of the officer who took notes during the interview. "'A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.'" Buchanan, 353 N.C. at 341–42, 543 S.E.2d at 829 (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). The presence of the note-taking officer and Deputy Heckman's unarticulated determination not to let defendant leave have no bearing on whether defendant was in custody since defendant was unaware of these facts.

The trial court's findings of fact support its conclusions that defendant was not in custody and was not entitled to Miranda warnings. We overrule defendant's assignments of error on this point.

Defendant next argues that the trial court erred in denying his motion to suppress, contending that he invoked his right to counsel prior to making inculpatory statements. We disagree.

7

Once a suspect invokes his right to counsel during a custodial interrogation, "all questioning must cease until an attorney is present or the suspect initiates further communication with the police." State v. Dix, 194 N.C.App. 151, 155, 669 S.E.2d 25, 28 (2008) (citing Edwards v. Arizona, 451 U.S. 477, 485 (1981)), appeal dismissed and disc. review denied, 363 N.C. 376, 679 S.E.2d 140 (2009). A suspect must "at a minimum, [make] some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. . . ." McNeil v. Wisconsin, 501 U.S. 171, 178 (1991). "However, '[i]f the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.'" Dix, 194 N.C. App. at 155, 669 S.E.2d at 28 (quoting Davis v. United States, 512 U.S. 452, 461–62 (1994)). In dicta, the Davis Court suggested that "when a suspect makes an ambiguous statement it will often be good police practice for the interviewing officer[ ] to clarify whether or not he actually wants an attorney." Davis, 512 U.S. at 461.

Here, the trial court found:

The Defendant then asked Brown, "Do you want to know if I shot him?" Brown said, "Did you?" The Defendant said, "Do I need an attorney?" and Brown replied, "I don't know, I can't answer that for you, are you asking for one?"

The Defendant's response was, "I know a guy got shot at the U.S. Cellular by some guy named Troy." The Defendant did not respond to Brown's question regarding the Defendant's wishes regarding an attorney nor did he allude to an attorney again until the end of the interview. The Defendant did not try to leave.

Defendant argues that he made a sufficiently unambiguous request for counsel to halt questioning and contends this exchange was similar to that in Torres. Defendant also cites Torres for the proposition that in custodial situations, "when faced with an ambiguous invocation of counsel, interrogation must immediately cease except for narrow questions designed to clarify the person's true intent." 330 N.C. at 529, 412 S.E.2d at 27.

We first note that, as discussed above, defendant was not in custody at the time of the interview and, thus, there was no custodial interrogation. Therefore, defendant was not entitled to the protections of Miranda and its progeny. However, out of an abundance of caution and as a guide to our trial courts, we address this portion of defendant's argument as well.

Torres, the only case cited by defendant on this point, was decided prior to Davis. This Court has since held that "Davis [ ] imposes the burden of resolving any ambiguity as to whether a suspect wishes to invoke his right to counsel upon the individual, rather than leaving the question up to the interrogating officer." Dix,

8

> 194 N.C. App. at 157, 669 S.E.2d at 29. "[C]larifying questions [by the interviewing officer] are not required." Id. at 156, 669 S.E.2d at 28. In Dix, the defendant stated "I'm probably gonna [sic] have to have a lawyer." Id. The interviewing officer then responded, "It's up to you if you wanna [sic] answer questions or not. I mean, you can answer till you don't feel comfortable, whatever and then not answer. Ya [sic] know, that's totally up to you. I know earlier you said you was [sic] wanting to talk to me because. . . ." Id. at 158, 669 S.E.2d at 29. We held that "the trial court's assumption that [the interviewing officer] was required to ask clarifying questions, and its subsequent conclusion that it was required to resolve any ambiguity in the defendant's favor were error." Id.
>
> Here, defendant did not unambiguously ask for an attorney; rather, he asked Detective Brown's opinion about the matter. Although not required to do so, Detective Brown asked the clarifying question "are you asking for one?" Defendant failed to respond and instead continued telling the detective about the shooting. Thus, Detective Brown went beyond what is required under State and federal case law. The trial court's findings fully support its conclusions that defendant did not unambiguously ask for an attorney. Defendant's assignments of error on this issue are overruled.

Little, 692 S.E.2d at 454-456. This state court adjudication and denial of the substance of petitioner's Claim i. on the merits did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in Miranda v. Arizona, 384 U.S. 436 (1966), Stansbury v. California, 511 U.S. 318 (1994) or Oregon v. Mathiason, 429 U.S. 492 (1977). Nor is the Court of Appeals' opinion based on an unreasonable determination of facts, in light of the evidence presented at trial or on appeal. proceedings. As recently explained by the Supreme Court for Miranda purposes, custody is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. Howes v. Fields, ___U.S. ___, 132 S.Ct. 1181, 1189 (2012). The state court examined the facts and applied them to the appropriate constitutional standards in detailed and through manner. Furthermore, this court may not consider any new evidence presented in support of petitioner's current claims, that was not presented to the state

9

courts. See Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1389-99 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Here, the Court of Appeals decision on this issue was not contrary to, or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. Nor is the court's decision based upon an unreasonable determination of facts in light of the evidence presented in the state court proceeding.

### ii. Denial of Counsel

Petitioner asserts as Claim ii that based on:

> the constitutional violation stated in 'ground one' above, and in support of this ground, the facts stated in ground one substantially reflects and support this ground because said interrogating officers failed to advise and inform petitioner not only to [sic] his Miranda rights but also his right to counsel.

This claim was discussed in detail by the Court of Appeals and that discussion is set out in Claim i. This court found that the appellate court's decision was not contrary to, or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in Miranda, Stansbury, or Mathiason. Nor is the court's decision based upon an unreasonable determination of facts in light of the evidence presented in the state court proceeding.

### CERTIFICATE OF APPEALABLITY

Having dismissed the petition, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") A certificate of appealability may issue only upon a "substantial

10

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

Accordingly, respondent's Motion for Summary Judgment [D.E.7] is GRANTED, and the matter is DISMISSED. The certificate of appealability is DENIED. The pending motions for appointment of counsel are likewise DENIED [D.E. 5 and 16]. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this 27 day of August 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE